UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT C. WELLS,

                Plaintiff,

-vs-                                        Case No. 8:04-cv-315-T-24EAJ

Pinellas County Sheriff's Deputies:
NORMAN C. CRAMER, KENNETH I.
BURROUGHS, CHRISTOPHER TAYLOR,
JEFFREY S. PREISING, and TERRY R.
METTS, in their individual capacities,[1]

                Defendants.
_____

**ORDER**

      This case is on remand from the Eleventh Circuit. Before the Court are Defendants' motions to dismiss, which the Court has construed as motions for summary judgment (Doc. Nos. 48, 77) and Plaintiff Wells' responses thereto. (Doc. Nos. 69, 79).

---

[1] See Doc. No. 47 in which Plaintiff responded to a Court-order requiring him to state whether he was suing Defendants in their official or individual capacities.

## BACKGROUND

Wells is proceeding on his amended 42 U.S.C. § 1983 complaint (Doc. No. 27) (hereinafter "Complaint") alleging post-arrest excessive use of force and denial of medical care.[2] The allegations in the complaint arise from an incident that occurred on February

---

[2] Wells' original complaint was dismissed pursuant to Heck v. Humphrey, 512 U.S. 477, 487 (1994). The Eleventh Circuit reversed and remanded, stating:

> . . . Because we conclude that Wells's claim based on an asserted excessive use of force does not necessarily implicate the validity of his criminal conviction, the dismissal of that claim is reversed.
>
> Wells's § 1983 complaint claimed that the defendant officers had "conspired to fabricate, falsify and conceal evidence" to justify their use of excessive force against him in the course of his arrest. Wells alleged that the defendant officers conspired to cause Wells's vehicle to come into contact with a police cruiser so that the damaged cruiser could be used to charge Wells with a violent offense and to justify the use of excessive force by the defendant officers. Wells recited his attempts to elude the officers. Once Wells stopped and exited his vehicle, he was lying face down and handcuffed. Wells alleged that the officers punched him at least 30 times, kicked him in the face, head, side and back, hit him on the head with an unidentified object, and otherwise assaulted him. Wells claimed further that he was bleeding profusely from his head, face and ear, and the officers rejected his pleas to be seen by a paramedic. As a result of the alleged beating, Wells claimed he suffered from headaches, severe back problems, and suffered permanent damage to his left hand.
>
> . . . .
>
> Wells was convicted in state court, pursuant to a plea agreement, of several charges of aggravated assault, including assault on law enforcement officers, aggravated fleeing and eluding, and resisting arrest without violence. We accept Wells's concession that a judgment in his favor on his conspiracy claims would necessary implicate the validity of his convictions. And, to the extent that Wells seeks to invalidate those convictions, whether expressly or by implication, we affirm the district court's preclusive application of Heck.
>
> . . . .
>
> A plaintiff may prevail on a claim for excessive force without necessarily implying the invalidity of the underlying conviction for the offense giving rise to the excessive force. . . .
>
> To the extent that Wells's complaint alleged an excessive use of force after he was arrested, restrained and posed no threat to the defendant officers, his section 1983 action, if successful, would not necessarily imply the invalidity of his underlying conviction. . . .We REVERSE the district court's order of dismissal as it applied to this post-arrest excessive force claim.

19, 2000, while Wells attempted to evade arrest by fleeing in his vehicle and eventually fleeing from the Defendants on foot.

Plaintiff seeks declaratory relief, compensatory and punitive damages, and other "relief as the Court deems proper."

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c).  The evidence is viewed in the light most favorable to the opposing party.  Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir. 2004); Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

The Court does not decide issues of material fact, but determines whether such issues exist to be tried. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).  Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. Id. at 248.  Applicable substantive law will identify those facts that are material. Id.

## APPLICABLE SUBSTANTIVE LAW

### 1. Excessive Use of Force

All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop or other seizure are analyzed under the Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989). However, while the Fourth Amendment guards against both unlawful arrest and the use of excessive force,

every officer may use some force in carrying out a custodial arrest no matter what the severity of the underlying crime is, and the Graham Court noted that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id.

Determining whether the force used is "reasonable" under the Fourth Amendment, requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests. Bell v. Wolfish, 441 U.S. 520, 559 (1979). In Graham, the Court outlined the constitutional standard of "objective reasonableness" as it relates to a claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop or seizure. Graham, 490 U.S. at 396. This reasonableness test under the Fourth Amendment is not capable of precise definition or mechanical application. Bell, 441 U.S. at 550. However, its application requires attention to the facts and circumstances of each particular case.

When determining whether an officer used excessive force in the course of an arrest, a number of factors are evaluated by the court. These factors include: the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of officers or others; and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Lee v. Ferraro, 284 F.3d 1188, 1197-98 (11th Cir. 2002). In assessing the reasonableness of the force at issue, the reasonableness of the force must be considered "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

2. Deliberate Indifference to Medical Needs

It is well-settled that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.[3] Estelle v. Gamble, 429 U.S. 97, 104 (1976). However, "[m]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citations omitted). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994). Moreover, when an inmate receives adequate medical care, but desires "different modes of treatment, the care the jail provided [does] not amount to deliberate indifference." Hamm, 774 F.2d at 1575.

The Eleventh Circuit has explained that the "deliberate indifference" standard has an objective and a subjective component. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d at 1186, and that both components of deliberate indifference must be met for a plaintiff's claim to succeed.

The objective component of deliberate indifference concerns the "seriousness" of the injury or deprivation which a plaintiff suffered. Hamm, 774 F.2d at 1574 ("[W]ith

---

[3] While the conditions under which a convicted prisoner is held are subject to scrutiny under the Eighth Amendment, the conditions under which a pretrial detainee is confined are scrutinized under the Due Process Clauses of the Fifth and Fourteenth Amendments. Bell v. Wolfish, 441 U.S. 520, 535 & n. 16 (1979) (utilizing Fifth Amendment Due Process Clause); Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir.1985) (utilizing Fourteenth Amendment Due Process Clause), cert. denied, 475 U.S. 1096 (1986). The law for convicted prisoners and pretrial detainees is the same.

reference to medical needs, [prison officials] must not be deliberately indifferent to detainees' serious medical needs."). The Supreme Court has held that deliberate indifference to medical needs "amounts to an Eighth Amendment violation only if those needs are 'serious.' " Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component of deliberate indifference concerns the state of mind of the defendant whose acts or omissions are alleged to be the basis of the plaintiff's claim. Hill, 40 F.3d at 1186. The Eleventh Circuit has "consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." Id. at 1186 (internal marks and citation omitted). The state of mind required is thus greater than mere negligence. See Farmer v. Brennan, 511 U.S. 825, 835 (1994).

"No static 'test' can exist by which courts define cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.' " Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958) (plurality opinion)).  "The objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.' " Hudson, 503 U.S. 1, 8 (1992) (quoting Estelle, 429 U.S. at 103).

In Wilson v. Seiter, 501 U.S. 294, 304 (1991), the Court held that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.  Therefore, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. See Estelle,  429 U.S. at 106.  "It is only such indifference" that can violate the Eighth Amendment, ibid. (emphasis added); allegations of "inadvertent failure to provide adequate medical care," id., at 105,  or of a "negligent . . . diagnos[is],"

id., at 106, fail to establish the requisite culpable state of mind. A court considering a prisoner's Eighth Amendment medical claim must determine whether "'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8-9.

## PLAINTIFF'S ALLEGATIONS

Wells contends that on February 19, 2000, he was involved in a "low speed chase" with defendants and that the chase ended in a residential yard when Wells' vehicle, which had no brakes and had other mechanical problems, ran out of gas. He alleges that as his vehicle was slowing to a stop, he exited the vehicle and attempted to flee from the Defendants. Then, according to Plaintiff, the Defendants immediately tackled and handcuffed him and Defendant Taylor stopped Plaintiff's vehicle from rolling before joining the other Defendants.

Wells contends that as he lay face down on the ground, handcuffed behind his back, Defendants began to take turns striking and kicking him, "high-fiving" each other as the beating continued. He alleges that Defendant Cramer straddled Wells' back and used his fists to punch Wells' face at least thirty times. He contends that Defendants Burroughs, Metts, Taylor, and Preising kicked his face, head, sides and back.

In addition, Wells alleges that Defendants Burroughs, Metts, Taylor, and Preising "leapt into the air and jumped onto Plaintiff's head and back, crushing him with their knees and all their weight, and beat his head over and over with an unknown object." After the beating, according to Wells, Defendants Cramer and Taylor "loaded the plaintiff bleeding

profusely from his head, face, and ear, into a police cruiser." They ignored Wells' pleas to be seen by a paramedic who had arrived on the scene.

Wells also alleges that when the paramedic requested permission to treat him, Defendant Cramer falsely stated that Wells had refused treatment. Wells contends that he continues to suffer effects from Defendants' brutal beating. He says he has constant headaches, can no longer stand more than fifteen minutes due to severe back problems, and has permanent damage to his hands.

### Additional Claims in Plaintiff's Response to Motion for Summary Judgment

Wells claims that he had ceased struggling when he was beaten. He also claims that his Complaint arises from an ongoing conflict with the Defendants "which stemmed from prior run-ins." He alleges that the Court should consider the element of ill-will of the officers toward him. He claims that Defendant Taylor perjured himself in that he stated in his original deposition that he did not see Defendant Cramer tackle Wells, but stated in his sworn affidavit that he [Taylor] saw Defendant Cramer tackle Wells.

Wells claims that although Defendants contend that Wells was tackled on rocks and pavement, he was, in fact, tackled on grass and dirt. Wells admits that he does not mention the tackle in his complaint, but "it is apparent from the record that neither Plaintiff nor Defendant Cramer suffered any injuries that were consistent with landing on rocks and pavement."

Wells also claims that he was tackled about 5-10 feet away from the fence shown in the Defendants' photograph exhibits. Wells claims that Defendants' exhibits do not fairly depict the area in which he was captured. Wells alleges that he did not resist after he was

tackled by Defendant Cramer. He alleges that at the time of his arrest, he was in "his '40's," was 5'7" tall and weighed 170 pounds, while the Defendants were in their '30's and were much larger than Wells.

Wells alleges that Defendants' statements that he had a "past-known aggressive behavior toward law enforcement officers and refused handcuffing so that the officers had to use techniques to impede movement were untrue."[4] Plaintiff contends that the officers lied to the paramedics about the name of the paramedic who was available to treat him.

## DISCUSSION

A review of the record demonstrates that no genuine issues of material fact remain, and that Defendants are entitled to summary judgment as a matter of law.

Wells' Amended Complaint, even when construed liberally, fails to allege any facts in support of his claim that would demonstrate a constitutional violation under the Fourth Amendment entitling him to relief. While the Fourth Amendment guards against both unlawful arrest and the use of excessive force, every officer may use some force in carrying out a custodial arrest no matter what the severity of the underlying crime for which the arrest is being made is.

In assessing the reasonableness of force, as applied to the present facts, the Defendants' affidavits demonstrate that Wells was attempting to evade arrest by using his vehicle and eventually abandoning his vehicle and fleeing on foot. See Affidavits of Defendants Norman Cramer, Kenneth Burroughs, Christopher Taylor, Jeffrey Preising, and

---

[4] A review of the Department of Corrections online website shows that Wells had a lengthy previous criminal history in Pinellas County, Florida.

Terry Metts. In fact, Wells specifically states that he was engaged in a vehicle chase with the Defendants and that he then attempted to flee from the Defendant law enforcement officers on foot once he abandoned his vehicle. See Plaintiff's Amended Compl., p. 8, Dkt. 27.

As the Defendants pursued Wells' vehicle, Wells made a number of attempts to crash into the Defendants' police vehicles, threatening the safety of the officers and other vehicles in the vicinity. See Affidavits of Norman Cramer, Kenneth Burroughs, Christopher Taylor and Jeffrey Preising. In addition, once Wells abandoned his vehicle in a residential yard and fled on foot, he posed a serious threat to residents in surrounding homes. Consequently, Defendants were faced with making split second decisions on how to contain Wells and arrest him. Based on the circumstances, Defendants brought him to the ground in an effort to secure him when he failed to stop running and surrender to officers. See Affidavit of Jeffrey Preising. When Wells was eventually brought to the ground, he resisted arrest and sustained injuries, as did Defendants Cramer and Preising, when they landed on rocks and pavement. See Defendants' Exhibits 1, 2, 3, 4, 5 and 6.

Furthermore, the Defendants are entitled to qualified immunity on Wells' excessive use of force claim. In order to determine whether an officer is entitled to receive qualified immunity, the first step is to determine whether the officer was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). In the present case it is evident that Defendants Cramer, Burroughs, Metts, Taylor and Preising were acting within the course and scope of their discretionary authority when they arrested Wells following a police chase where he tried

to evade officers by fleeing in his vehicle and later fleeing on foot. See Plaintiff's Amended Compl., p. 8, Dkt. 27.

Once a defendant establishes he was acting within the scope of his discretionary authority, the burden then shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. Graham, 490 U.S. at 396-397.  This inquiry involves a determination of whether any constitutional violation occurred. If a constitutional violation is found, the Court must then assess whether the constitutional duty violated was clearly established at the time of the occurrence. Wilson v. Layne, 526 U.S. 603 (1999); Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002); Vaughn v. Cox, 316 F.3d 1210 (11th Cir. 2003).

On February 19, 2000, the constitutional duties relevant to Wells' claim of unconstitutional use of excessive force during his arrest was established by the United States Supreme Court. See Graham v. Connor, 490 U.S. 386 (1989) and Saucier v. Katz, 533 U.S. 194 (2002). It is arguable that Wells' allegations, if true, could support a violation of the Fourth Amendment's prohibition against the use of excessive force.

However, the second qualified immunity inquiry is whether the right was clearly established. See Saucier, 533 U.S. at 202. The Saucier Court clarified this inquiry by defining whether it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. This inquiry was further refined in Hope v. Pelzer, 536 U.S. 730, 741 (2202), wherein the United States Supreme Court stated that the inquiry is whether the state of the law gave the officers fair warning that their alleged treatment of the plaintiff was unconstitutional.

Wells was advised by officers to comply with their commands to stop resisting arrest. See Affidavit of Jeffrey Preising. Because Wells failed to comply with Defendants' commands, the Defendants were forced to tackle him to the ground to prevent his fleeing and to secure him in a manner that would enable them to place him in handcuffs.

The injuries Wells alleges he received as a result of the arrest were de minimus. The injuries are consistent with his being brought to the ground as a result of his continued physical resistance to officers by kicking and flailing his arms, especially when coupled with landing on rocks and pavement. See Affidavits of Kenneth Burroughs, Terry Metts; see also Exhibits 1 and 2.

Based on the circumstances prior to apprehending Wells, i.e. a prolonged vehicle chase and his attempt to flee from officers, it was reasonable for the Defendants to conclude their conduct was in fact lawful. See Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003)(finding that forcing a plaintiff to the ground and placing handcuffs on him was de minimus force and the application of such force, without more, did not support a claim for excessive force in violation of the Fourth Amendment).

### Medical Treatment

Wells alleges he did not receive medical treatment following his arrest. See Plaintiff's Amended Compl., p. 9-10, Dkt. 27. As indicated by Defendant Preising's Affidavit, Wells was transported to Tampa General Hospital for the treatment of his injuries once he was taken into custody by the Tampa Police Department. See Affidavit of Jeffrey Preising.

Based on the facts of the present case, the Defendants reasonably believed that the amount of force used to arrest Wells was appropriate and necessary and the

Defendants are entitled to qualified immunity. Plaintiff's own exhibits show that his injuries were de minimus.

## Summary

Wells was a known felon who had charges of fleeing and eluding pending against him at the time of this incident. See Affidavit of Terry Metts. Moreover, Wells posed an immediate threat to the safety of officers and citizens when he created a hazard on the road by driving erratically in his attempt to flee from police. Furthermore, at no time did Wells attempt to stop his vehicle and surrender despite the fact that Defendant Metts, along with other officers, had their emergency lights activated clearly putting Wells on notice that he was being pursued.

Wells alleges he was "beaten" by Defendants. However, the injuries Wells sustained were the result of the Defendants collectively trying to secure him in order to handcuff him as he actively resisted arrest. See Affidavit of Terry Metts; see also Affidavits of Norman Cramer, Kenneth Burroughs, Christopher Taylor, and Jeffrey Preising. (Docs. 50, 51, 52 and 53).

The amount of force used by Defendants to secure Wells was reasonable and consistent with the bruises, cuts and scrapes he sustained as a result of his resistance to arrest. A de minimus amount of force does not support a claim of excessive use of force under the Fourth Amendment. See Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003).

Accordingly, the Court orders:

-13-

That Defendants' motions to dismiss, construed as motions for summary judgment (Doc. Nos. 48, 77) are granted. The Clerk is directed to enter judgment for the Defendants and to close this case.

ORDERED at Tampa, Florida, on November 13, 2006.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

USCA
Counsel of Record
Robert C. Wells, Pro Se