UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT C. WELLS,

                Plaintiff,

-vs-                                               Case No. 8:04-cv-315-T-24EAJ

Pinellas County Sheriff's Deputies:
NORMAN C. CRAMER, KENNETH I.
BURROUGHS, CHRISTOPHER TAYLOR,
JEFFREY S. PREISING, and TERRY R.
METTS, in their individual capacities,

                Defendants.
_____

## O R D E R

This cause is before the Court on Plaintiff Wells' motion for a new trial (Doc. No. 184); the Defendants' response to Wells' motion for a new trial (Doc. No. 192); and Wells' motion to rule on his motion for a new trial without considering the out-of-time response from Defendants, or in the alternative, allow him to file a reply to the Defendants' response to his motion for new trial (Doc. No. 195).

Background

Pro se prisoner Robert Craig Wells proceeded to trial on an amended 42 U.S.C. § 1983 civil rights complaint[1] naming as defendants, Pinellas County Sheriff's Deputies

---

[1] Wells' original complaint was dismissed pursuant to Heck v. Humphrey, 512 U.S. 477, 487 (1994). The Eleventh Circuit reversed and remanded, stating:

    . . . Because we conclude that Wells's claim based on an asserted excessive use of
force does not necessarily implicate the validity of his criminal conviction, the dismissal of that
claim is reversed.

(continued...)

Norman C. Cramer, Kenneth Burroughs, Terry R. Metts, Christopher Taylor, and Jeffery S. Preising.

In his complaint, Wells alleged that the defendants "conspired to falsify and conceal evidence" to justify their use of excessive force against him during his arrest on February 19, 2000. The defendants filed a motion to dismiss, which this Court construed as a motion for summary judgment. Wells responded, swearing that Cramer tackled him; that the defendants placed him in handcuffs; and that the defendants beat him while he lay face

---

[1](...continued)
Wells's § 1983 complaint claimed that the defendant officers had "conspired to fabricate, falsify and conceal evidence" to justify their use of excessive force against him in the course of his arrest. Wells alleged that the defendant officers conspired to cause Wells's vehicle to come into contact with a police cruiser so that the damaged cruiser could be used to charge Wells with a violent offense and to justify the use of excessive force by the defendant officers. Wells recited his attempts to elude the officers. Once Wells stopped and exited his vehicle, he was lying face down and handcuffed. Wells alleged that the officers punched him at least 30 times, kicked him in the face, head, side and back, hit him on the head with an unidentified object, and otherwise assaulted him. Wells claimed further that he was bleeding profusely from his head, face and ear, and the officers rejected his pleas to be seen by a paramedic. As a result of the alleged beating, Wells claimed he suffered from headaches, severe back problems, and suffered permanent damage to his left hand.

. . . .

Wells was convicted in state court, pursuant to a plea agreement, of several charges of aggravated assault, including assault on law enforcement officers, aggravated fleeing and eluding, and resisting arrest without violence. We accept Wells's concession that a judgment in his favor on his conspiracy claims would necessary implicate the validity of his convictions. And, to the extent that Wells seeks to invalidate those convictions, whether expressly or by implication, we affirm the district court's preclusive application of Heck.

. . . .

A plaintiff may prevail on a claim for excessive force without necessarily implying the invalidity of the underlying conviction for the offense giving rise to the excessive force. . . .

To the extent that Wells's complaint alleged an excessive use of force after he was arrested, restrained and posed no threat to the defendant officers, his section 1983 action, if successful, would not necessarily imply the invalidity of his underlying conviction. . . .We REVERSE the district court's order of dismissal as it applied to this post-arrest excessive force claim.

down on the ground. Wells averred further that the defendants "high-fived" each other while they took turns beating him.

On November 13, 2006, this Court granted the defendants' motion for summary judgment based on qualified immunity. Wells appealed. On January 11, 2008, the United States Court of Appeals for the Eleventh Circuit concluded that this Court "reversibly erred" by granting summary judgment to the defendants and remanded the case for further proceedings. The mandate issued on February 11, 2008. Subsequently, the case was tried before a jury on January 5-7, 2009.[2]

The jury found for the Defendants. On January 21, 2009, Wells timely filed a motion for new trial. (Doc. No. 184). On January 22, 2009, defendants filed a motion for taxation of costs and attorney fees (Doc. No. 185), and on January 23, 2009, Wells filed a motion for costs. (Doc. No. 186). On February 17, 2009, Wells filed a motion to rule on his motion for a new trial without considering the out-of-time response from Defendants, or in the alternative, allow him to file a reply to the Defendants' response to his motion for new trial (Doc. No. 195).

Motion for New Trial

Rule 59, Federal Rules of Civil Procedure, provides, "The court may, on motion, grant a new trial on all or some of the issues ... after a jury trial, for any reason for which

---

[2] Wells had no deliberate indifference medical claims or conspiracy claims when the case went to trial. See Doc. No. 192, p. 6, n.2 where the Eleventh Circuit stated: "On appeal, Wells does not argue that the appellees were deliberately indifferent to his medical needs, so we do not consider this claim," and Doc. No. 24, pp. 3-4 where Wells conceded: a judgment in his favor on his conspiracy claims would necessarily implicate the validity of his convictions, and that "to the extent that he seeks to invalidate those convictions, whether expressly or by implication" the claims had not accrued pursuant to *Heck v. Humphrey,* 512 U.S. 477, 487 (1994).

-3-

a new trial has heretofore been granted in an action at law in federal court." The decision as to whether to grant a new trial is committed to the discretion of the trial judge. *Lambert v. Fulton County, Ga.*, 253 F.3d 588, 595 (11th Cir. 2001). "A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir.2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984)). *See Columbia Data Products, Inc. v. Sumantec Corp.*, 20080 WL 516748 (M.D. Fla., Feb. 22, 2008).

Wells argues that he should be granted a new trial because 1) this Court refused to appoint counsel to represent him; 2) discovery violations by counsel for defendants; 3) a need for additional expert testimony; 4) Wells' lack of access to legal mail and/or law library materials; 5) this Court's failure to grant Wells' "last minute" motion to continue the trial; 6) the admission of "pre-arrest facts" during the trial; 7) the admission of Wells' "convictions which stem from said pre-arrest facts"; 8) the admission of the video deposition of witness, Anne S. Rahrer; 9) the admission of testimony from former Tampa Police Department Officer James T. Gutch; 10) the exclusion of evidence or testimony regarding prior and/or subsequent bad acts by defendants and/or James T. Gutch; 11) the exclusion of evidence or testimony regarding any claimed lost wages or loss of ability to earn; 12) the exclusion of any argument regarding defendants' failure to call any witnesses; 13) the exclusion of evidence or testimony regarding Wells' prior claim of defendants' deliberate indifference to his serious medical needs; 14) the exclusion of discovery documents from non-Party,

Terranton Hunt; 15) the presence of two officers from the Department of Corrections behind Wells while he was seated at the table in the courtroom; 16) the abbreviation of his opening statement; 17) the admission of erroneous expert testimony; and 18) the erroneous use of the Eleventh Circuit's Pattern Jury Instructions and verdict forms.[3]

Wells' claims can be grouped into four categories: 1) the Court's refusal to appoint counsel; 2) the Court's rulings on various pre-trial motions; 3) the Court's evidentiary and other rulings during trial; and 4) the jury instructions and verdict form.

## Appointment of Counsel in Civil Matters

There is no constitutional right to the appointment of counsel in civil matters, including in §1983 claims by inmates. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). When a pro se litigant requests the appointment of counsel, the district court judge has broad discretion in whether to appoint counsel or not. However, counsel should be appointed only in exceptional circumstances. *Id.* The court's decision on whether to appoint counsel will not be overturned unless an abuse of discretion is shown. Exceptional circumstances are found not to exist where the core facts of the case are not in dispute and the legal claims are straightforward. *Lavender v. Kearney*, 206 Fed. Appx. 860, 864 (11th Cir. 2006)(citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)). The core facts of the instant case were not in dispute. There was no dispute of the facts surrounding Wells' flight from the defendants both by car and by foot and the fact that he was apprehended

---

[3] Wells also complains that "Plaintiff was not given an opportunity in Court, unlike the Defendants' counsel who was granted an ex parte motion to possess both a cell phone and lap top computer, Doc. 165, nor each evening at the Zephyrhills C.I. prison during the trial proceedings to review the Court's conclusions and cases cited." (Motion for New Trial, Doc. No. 184, p. 5). There is no merit to this argument. Plaintiff did not seek to have any electronic devices in Court. Furthermore, the Court allowed his sister to assist him until Wells took advantage of the Court's doing so, and the assistance became intrusive in the trial proceedings.

by the defendants after a foot chase. The only truly disputed fact was what amount of force the defendants used once Wells was handcuffed after his arrest. Additionally, the legal claim was a straightforward one of whether or not Wells' Fourth Amendment right to be free from the use of excessive force during his arrest was violated. No exceptional circumstances existed in the instant case that warranted the appointment of counsel.

Wells has shown that he is capable of grasping the legal concepts and applying them to the facts of the case at bar and the Court properly applied the law in refusing to appoint counsel. Wells' argument that had he timely received the Court's December 2008 order denying counsel, he could have filed a motion for rehearing of the Court's order denying appointment of counsel has no merit. The Court had denied Wells' motion for appointment of counsel in 2006 and had denied his motion for appointment of counsel at the pre-trial telephonic conference. Wells had no expectation that a motion for rehearing would be successful.

## Rulings on Pre-Trial Motions

Wells alleges that the trial court erred in denying his pre-trial motions for continuances and a motion regarding an alleged discovery violation made on the first morning of trial. Decisions regarding these pre-trial matters are within the broad discretion of the Court and will not be overturned unless it is shown that there is an abuse of that discretion. *McBride v. Rivers*, 170 Fed. Appx. 648, 658-659 (11th Cir.2006).

Specifically as it relates to a motion to continue, the Court's decision will not be overturned unless the denial is arbitrary or unreasonable. *Hashwani v. Barbar*, 822 F.2d 1038, 1040 (11th Cir. 1987). The *Hashwani* Court stated:

> . . .The denial of a continuance is within the broad discretion of the district court and will not be overturned unless arbitrary or unreasonable. *United States v. 2.61 Acres of Land*, 791 F.2d 666 (9th Cir.1985). The court in that case set forth four factors for reviewing denials of a requested continuance under the abuse of discretion standard:
>
>> First, we consider the extent of appellant's diligence in his [or her] efforts to ready his [or her] defense prior to the date set for hearing. Second, we consider how likely it is that the need for a continuance could have been met if the continuance had been granted. Third, we consider the extent to which granting the continuance would have inconvenienced the court and the opposing party, including its witnesses. Finally, we consider the extent to which the appellant might have suffered harm as a result of the district court's denial. *Id.* at 671.

Hashwani, 822 F.2d at 1040.

Wells diligently prepared for trial in that he continuously attempted to obtain discovery from the defendants and nonparty witnesses. By the time of the discovery cut-off date (November 21, 2008) and the pre-trial conference (November 25, 2008), all non-objectionable discovery due from the defendants had been provided to Wells. Wells was not successful in obtaining timely service on many of the non-party witnesses he wished to depose by written questions.

On December 19, 2008, Wells filed a motion to continue trial wherein he requested a continuance of the trial due to the recent death of his father, Guy E. Wells, whom Wells had anticipated calling as a witness. On the first morning of trial, Wells renewed that same motion verbally. Guy E. Wells had no first-hand knowledge of the events of February 19, 2000, which were the subject of this lawsuit. Plaintiff Wells proffered the testimony that Guy E. Wells would have provided: Guy E. Wells' testimony would have pertained to alleged encounters Guy E. Wells claimed to have had with some of the defendants prior to February 19, 2000.

Plaintiff Wells also requested the continuance to find other "witnesses" who could testify as to what Guy E. Wells had told them about the alleged prior encounters with the defendants. That testimony, even if it had been found to be relevant, would have been hearsay and not admissible. Therefore, Wells' stated need for the continuance would not have been met, as the testimony for which he was seeking a continuance would not have been admissible at trial.

All five defendants and all witnesses had been made aware of the January 5, 2009 trial date, and all but one witness was available to testify live at trial. The one unavailable witness, Anne S. Rahrer, was deposed by videotaped deposition on December 19, 2008, and therefore all witnesses were ready and able to be present for the trial. Additionally, this matter pertained to an event that took place in February 2000, nearly nine years prior to the trial date and the date the original Complaint had been served. To have rescheduled all of the parties and witnesses for another trial would have been extremely inconvenient to the defendants as well as the witnesses.

Wells was made aware of the January 2009 trial date more than four months in advance by the court's Order of August 27, 2008. Sufficient time existed for Wells to obtain any expert review or opinions he desired, to put together proposed jury instructions and verdict forms, to obtain proper service on any non-party witnesses for deposition or live appearance at the trial, or to make any and all trial preparations necessary to be ready for the January 2009 trial. From the record, it appears that the only activity taken by Wells was to file motions requesting various service and subpoena forms and motions requesting that the Marshal serve the subpoenas on his proposed witnesses. Wells' alleged harm did not

lie in the court's refusal to grant the continuance, but in Wells' failure timely to perform various necessary pre-trial tasks. There were no outstanding discovery issues pertaining to defendants, as all requests from Wells to defendants, or to any of the non-party witnesses who either still were, or had been, employed by the Pinellas County Sheriff's Office, had been responded to by that person.

The only depositions by written questions which were not properly completed were for individuals not associated with the Pinellas County Sheriff's Office and on whom Wells apparently failed to obtain proper service.[4] Neither the defendants nor counsel for defendants had an obligation to assist Wells in obtaining the information he was seeking from those other witnesses.

The record indicates that neither the defendants nor counsel for defendants "failed to cooperate with discovery, deliberately delayed the proceedings [or] intentionally sabotaged Plaintiff's efforts to investigate and obtain evidence" as alleged in paragraph two of Wells' motion for new trial. The Court granted Wells' motion for extension of discovery from October 19, 2008, until November 21, 2008. At no time between the close of

---

[4] No statute authorizes or requires the government to undertake the expenses of witness fees and costs for indigent plaintiffs. *Gregg v. Clerk of U.S. Dist. Court*, 160 F.R.D. 653, 654 (N.D. Fla.1995) (citing *Badman v. Stark*, 139 F.R.D. 601, 604 (M.D. Penn.1991)). Therefore, Plaintiff is responsible for arranging service of the subpoenas on the witnesses. If Plaintiff seeks to have the subpoenas served by the United States, he must submit an appropriate sum of money for the U.S. Marshal to tender to the witnesses with his subpoenas. The subpoenas will not be served by the Marshal unless accompanied by a money order made payable to each of the witnesses for the full amount of the witnesses' travel expenses, plus the witness fee of $40.00 each for one day's attendance at trial. 28 U.S.C. § 1821. Again, because no statute authorizes the use of public funds for these expenses in civil cases, the tendering of witness fees and travel expenses is required even though Plaintiff was granted leave to proceed in forma pauperis.

discovery and the first day of trial did Wells indicate to the Court that he believed there were any outstanding discovery requests.

Wells also argues that a continuance was warranted due to the insufficiency of the law library at the Zephyrhills Correctional Institution and that this alleged insufficiency hindered his pre-trial and/or trial preparation. In support of this claim, Wells alleges that he needed the cases cited in a court Order dated December 15, 2008, denying his request for the appointment of counsel. These cases existed and were cited in both Orders from the court denying appointment of counsel, dated March 10, 2006 and December 15, 2008. Wells' failure to obtain these cases prior to his being moved to Zephyrhills Correctional Institution was Wells' fault and was not a proper ground for a continuance.

There is no indication that Wells ever attempted to obtain any form of expert testimony in this matter. Wells did not request the Court to take any action as to an expert and the Court did not refuse any request for any form of expert testimony. Therefore, any failure by Wells to propound expert testimony is Wells' fault and is a not a proper ground for a new trial.

Wells argues that he needed a continuance due to difficulties accessing the materials in the law library at Zephyrhills Correctional Institution where he was housed for several days prior to the trial, as well as during the trial. Wells arrived at the Zephyrhills Correctional Institution on December 31, 2008. Wells was well aware that he would be transferred to a state facility closer to the trial venue as that issue had been addressed by the Court at the November 25, 2008 Pre-Trial conference. In addition, the Court issued a Writ of Habeas Corpus Ad Testificandum to have Wells brought to the Middle District of

Florida shortly after the November 25, 2008 conference. Wells, in fact, did file four motions requesting various kinds of relief which bore a December 24, 2008 certificate of service.

In order to prevail on an access-to-courts claim, (access to a law library claim), Wells must allege an actual injury. *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998); *see Lewis v. Casey*, 516, U.S. 804 (1996). It is insufficient merely to allege a denial of access to a law library. Wells must show that the inadequate access or lack of access to the law library hindered his efforts to proceed with his claim in this civil rights action. 163 F.3d at 1291. Wells has failed to allege or show any actual injury as a result of the law library regulations/limitations at Zephyrhills Correctional Institution. Wells has no valid access-to-courts claim nor valid reason for a new trial based on lack of access-to-courts.

As in the case of *Thomas v. Warner*, 237 Fed. Appx. 435 (11th Cir. 2007) where an inmate alleged a week-long denial of access to a law library, Wells' claim of a short period of time where he felt his access to legal materials was limited does not rise to a level of denial to access to courts. The motions Wells claims he could not mail to the Court were made orally and considered by the court on the first day of trial, and these same motions had been considered numerous times prior to the start of trial. (See Doc. Nos. 145, 149, 151, 160, 161, 162, 163). As such any limitation on his access to the law library that may have existed did not injure Wells and did not constitute a denial of access to courts.

Evidentiary and Other trial Rulings

Prior to and during the trial, the Court was requested to make various evidentiary rulings. Of those, Wells contests the Court's ruling on twelve matters: 1) admission of "pre-arrest facts"; 2) admission of Wells' convictions "which stem from said pre-arrest facts"; 3) admission of a videotaped deposition of Anne S. Rahrer; 4) admission of testimony of former Tampa Police Department officer James T. Gutch; 5) exclusion of alleged prior and/or subsequent bad acts of James T. Gutch and any of the defendants; 6) exclusion of any evidence regarding Wells' lost wages or earning ability; 7) prohibition of comment on witnesses not called by the defendants; 8) exclusion of evidence regarding any deliberate indifference as originally alleged in Wells' complaint; 9) exclusion of any "evidence" from non-party witness, Terranton Hunt; 10) the presence of two uniformed guards from the Department of Corrections near Wells during the trial; 11) admonishments from the Court for Wells' inappropriate opening statement; 12) admission of the expert opinion of the defendants' expert witness, Corporal John Miller.

A trial court's evidentiary decisions are generally viewed under the abuse of discretion standard, and especially in cases where the court is considering rulings as to the probative value of relevant but prejudicial evidence. Deference is to be given to the trial Court's familiarity with the details of the case and experience with evidentiary matters. *Sprint/United Management Co. v. Mendelsohn*, -- U.S. --,128 S.Ct. 1140, 170 L.Ed. 1 (2008).

The "pre-arrest facts" referenced by Wells pertain to everything that happened prior to his being handcuffed on the night in question, including his flight from multiple law enforcement agencies and marked vehicles, his flight on foot once his vehicle became

disabled, and his pre-arrest resistance to being arrested. Wells' position is that the only relevant evidence from February 19, 2000, the night in question, is evidence of what happened after he was actually placed in handcuffs. It is Wells' contention that he was hit and kicked by the defendants after being placed in handcuffs and that he had not attempted to flee or resist arrest using any violence or threat of violence at any point during the event.

Wells' flight from the defendants on the night in question along with the specifics of his driving behavior and his attempt to flee on foot were relevant to what transpired on February 19, 2000. To have limited the testimony to post-handcuffing facts would have misled the jury as to the events that took place on February 19, 2000. In keeping with his desire to illicit only evidence from the point he was placed in handcuffs, Wells testified that he was "only charged with resisting arrest without violence" and therefore the use of force to effectuate his arrest was excessive. By testifying that his only charge was for resisting arrest without violence, Wells opened the door to the defendants' presenting to the jury testimony about Wells' convictions which stemmed from said pre-arrest facts. Wells was actually charged with, and convicted of, two counts of aggravated assault, four counts of aggravated assault on a law enforcement officer, and two counts of aggravated fleeing and eluding, in addition to one count of resisting arrest without violence, as a result of his actions on the night of February 19, 2000.

Generally, in Florida, at trial, a party is only allowed to inquire as to the number of prior felony convictions or convictions of crimes involving dishonesty or false statement. Fla. Stat. §90.610 (2007). However, when an individual attempts to mislead or delude a jury

regarding a prior conviction, the opposing party is allowed to go into details about the nature of the crime, and may offer into evidence certified copies of judgments and sentences to support that questioning. *Fotopoulos v. State*, 608 So.2d 784, 791 (Fla. 1992); *Cooper v. McNeil*, 2008 WL 1848783 (M.D. Fla. April 23, 2008). Rule 403 evidentiary rulings are reviewed under the abuse of discretion standard as the Court is required to conduct "an 'on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant.'"

There was no error by the Court in admitting the "pre-arrest facts" as they were highly relevant to the issues in the case. Neither was there error in admitting the details of the actual convictions which arose from the events in question, as Wells opened the door to their admission. Regardless of the fact that Wells had propounded a discovery deposition by written questions to witness, Anne S. Rahrer, there was nothing improper about the introduction of the videotaped deposition of Rahrer, as she was listed as a witness on every witness list, her videotaped deposition was properly noticed, Wells participated in the deposition by telephone, and she was a witness who was unavailable for trial who resided more than 100 miles away from the trial location. Fed. R. Civ. P. 32

Additionally, James T. Gutch was listed on every witness list by both the defendants and Wells. Therefore, there could be no surprise when he was called by the defendants to testify. Wells indicated to the court that he wanted to present evidence from the Sergeant and Lieutenant who supervised Officer James T. Gutch on the night in question. However, Wells was not successful in obtaining service on those individuals and there was no one

present at trial to proffer that evidence. Wells was permitted to ask Officer Gutch about any reprimand or discipline he might have received when Officer Gutch was on the stand.

Additionally, Wells indicated to the court that he wanted to offer evidence of disciplinary actions which were taken against the defendants for other events which were not related to the events of February 19, 2000. In discovery, Wells had obtained records pertaining to the disciplinary history of all of the defendants.

In *Horn v. Wallace*, 2007 WL 4414843 (N.D. Fla., Dec. 17, 2007), the Court decided that Plaintiff's disciplinary record request was overbroad and stated that the scope of disciplinary matters that would be relevant to the excessive force claim would be for allegations of excessive force against any of the defendants within five years prior to, or one year subsequent to, the event in question. There were no disciplinary matters or complaints against any of the defendants that pertained to a use of excessive force within five years prior to the subject incident or for a claim of excessive force within one year after the subject incident. Therefore, there were no prior or subsequent "bad acts" under Fed.R.Civ.P 404(b) which would have even arguably been relevant to Wells' claim of excessive force against the defendants.

Additionally, Wells failed to proffer to the Court what those prior and/or subsequent disciplinary matters were or what his intended line of questioning was. Consequently, he did not preserve the issue for potential appellate review. *De la Portilla v. State*, 877 So.2d 871, 874 (Fla. 3d DCA 2004).

Wells argues that he should have been allowed to offer evidence of lost wages and a loss of ability to earn as a result of the injuries he claimed resulted from the alleged use

of excessive force. However, Wells offered no medical evidence of any injury sustained, and more importantly, he made no claim for lost wages or ability to earn in his original complaint or in any of his subsequent pleadings. Therefore, lost wages or ability to earn was not an element of damages that the jury should have been allowed to consider.

Wells argues that he should have been allowed to comment on the defendants' failure to call several witnesses. Two of those witnesses, Sandee Jacobs and Lance Chambers, were employees of the Pinellas County Sheriff's Office. The other three witnesses, Jim Edinfield, Dick Robinson and Gerald Rademaker, were not on any witness list and were identified for the first time at trial by witness James Gutch as having been his supervising officers on February 19, 2000, upon questioning by Wells.

All of the witnesses Wells wanted to comment on the failure of the defendants to call were equally available to all parties and a properly issued subpoena to any of them would likely have produced them at trial. Therefore, to allow Wells to comment on the defendants' not calling them would have been improper. *Lasprilla v. State*, 826 So.2d 396, 398 (Fla. 3d DCA 2002)(citing *State v. Michaels*, 454 So.2d 560, 562 (Fla. 1984)).

Regardless of any of these witnesses' availability, none of them, with the exception of Sandee Jacobs, had any first-hand knowledge of the events of February 19, 2000. Sandee Jacobs was the forensic specialist who photographed the scene of the arrest. All of the photographs taken by Specialist Jacobs were offered and accepted into evidence without objection. None of the uncalled witnesses would have further "shed light on" the events and comment on their not testifying would have been improper. *Lasprilla v. State*,

826 So.2d 396, 398 (Fla. 3d DCA 2002)(citing *Martinez v. State*, 478 So. 2d 871, 871 (Fla. 3d DCA 1985), *review denied,* 488 So.2d 830 (Fla. 1986).

Wells alleges error in the Court's prohibiting testimony about the defendants' conspiring to fabricate and/or being deliberately indifferent to his serious medical needs. As a result of the mandates of the United States Court of Appeals for the Eleventh Circuit, Wells' claims of conspiracy and deliberate indifference were no longer viable at the time of trial. (See footnotes 1 and 2 above). When the appellate court remanded the case to the district court for trial, the only remaining issue was whether the defendants used excessive force by hitting and kicking Wells after he was handcuffed as Wells alleged. Testimony regarding conspiracy or deliberate indifference claims was irrelevant and would have been improper. *Wells v. Cramer*, et al., 158 Fed. Appx. 203 (11th Cir.2005); *Wells v. Pinellas Co. Sheriff's Deputies*, 2006 WL 3313759 (M.D. Fla. 2006); *Wells v. Cramer, et al.*, 262 Fed. Appx. 184) (11th Cir. 2008).

Wells sought to introduce an affidavit from non-party witness, Terranton Hunt, about what Hunt observed when he saw Wells at the jail several days after the arrest. At the time of this trial, Terranton Hunt was incarcerated at Sumter Correctional Institution. Wells did not request that Hunt be present at trial. Defendants have the right to cross examine any witnesses called at trial and would have been deprived of the right to cross examine Terranton Hunt had the court granted Wells' request to place the affidavit of Terranton Hunt into evidence.

In this motion for a new trial, Wells raises, for the first time, the issue that two officers from the State Department of Corrections were present in the courtroom during trial. Wells

is currently an inmate in the custody of the Department of Corrections prison system. At no time did the Department of Corrections officers get up from a seated position or in any manner impede Wells from the performance of his duties as a pro se Plaintiff. They were never pointed out by either the Court or counsel for defendants, nor did they draw attention to themselves. At no time did the Court or the witnesses or opposing counsel make the jury made aware of Wells' current incarceration.

Wells argues that he was prejudiced by the Court's direction to terminate his opening statement. An opening statement is not evidence in the case and Wells was not prohibited in any manner from presenting all relevant evidence by the Court during the pendency of the trial. Further, Wells' opening statement was only abbreviated after the court repeatedly attempted to direct and advise Wells that he could only make comments on relevant and admissible matters. It was only after Wells repeatedly ignored the Court's orders and was advised that if he did not discontinue disregarding the Court's orders that he would be asked to sit down, did the Court, in fact, direct Wells to terminate his opening statement.

The purpose of an opening statement is to advise the jury of facts of the case and not to make legal argument. The court, therefore, can terminate or limit an opening statement to exclude irrelevant facts and/or stop argument. *U.S. v. Lizon-Barias*, 252 Fed. Appx. 976, 978 (11th Cir. 2007); *U.S. v. Clarke*, 159 Fed. Appx. 128, 133 (11th Cir. 2005).

Wells argues that the defendants' expert witness, Corporal John Miller, was allowed to testify to an ultimate fact. Corporal Miller testified as to the Use of Force Matrix and what level of force law enforcement officers, generally, would be justified in using when confronted with various levels of resistance. Additionally, Corporal Miller testified that he

reviewed the police reports, the witness statements, and the depositions in this matter and it was his opinion that the level of the level of force the defendants used was within the parameters of the Use of Force Matrix. Such testimony was admissible.

### Jury Instructions and Verdict Form

The jury instructions are reviewed de novo to determine whether they misstate the law or mislead the jury. *Baker v. Coto*, 154 Fed. Appx. 854 (11th Cir. 2005) (citing *Palmer v. Bd. of Regents of Univ. Sys. Of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000)). The Court required all parties to submit jury instructions and verdict forms no later than December 29, 2008. The defendants submitted both according to the 2005 Pattern Jury Instructions (Civil) as promulgated by the Eleventh Circuit Court of Appeals. Wells submitted no proposed Jury Instructions or Verdict Form. The Court conducted a charge conference at which the Court went over the instructions the Court was going to give, which were Pattern Jury Instructions from the Eleventh Circuit Court of Appeals. The Court then instructed the jury, using the 2005 Pattern Jury Instructions from the Eleventh Circuit. There were no modifications to the pattern instructions and no special jury instructions were requested by any party, and none were given by the court. Therefore, the proper instructions and verdict forms were used and properly advised the jury of what the jury was to decide.

### Miscellaneous

Any additional objections in Wells' motion for new trial fail to demonstrate that the Court abused its discretion. The Court has individually addressed the major areas about

which Wells complains, and any additional objection as to the proceedings that Wells raises in his motion for new trial, but not addressed by the Court in this order, have no merit.

Accordingly, the Court orders:

1. That Wells' motion for new trial (Doc. No. 184) is denied.

2. That Wells' motion to rule on his motion for a new trial without considering the out-of-time response from Defendants, or in the alternative, allow him to file a reply to the Defendants' response to his motion for new trial (Doc. No. 195) is denied.

ORDERED at Tampa, Florida, on March 12, 2009.

Susan C. Bucklew
SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Robert Craig Wells